N5GGmurP

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                        23 Cr. 244 (PAE)

5    DONNA MURRAY,

6                                         Plea
                    Defendant.
7    ------------------------------x

8                                         New York, N.Y.
9                                         May 16, 2023
                                          1:00 p.m.
10

11   Before:

12                   HON. PAUL A. ENGELMAYER,

13                                        District Judge

14                         APPEARANCES

15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   JERRY FANG
          Assistant United States Attorney
18
     ROBERT BROWN
19        Attorney for Defendant

20   Also Present:   Justine Atwood, FBI
                     Martha Stolley
21

22

23

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N5GGmurP

1        (Case called)

2            THE DEPUTY CLERK:  Counsel, starting with the front

3    table, please state your appearances for the record.

4            MR. FANG:  Good afternoon, your Honor.  Jerry Fang,

5    I'm joined at counsel table by FBI Special Agent Justine

6    Atwood.  And also in the courtroom is Martha Stolly for the

7    victim entity.

8            THE COURT:  Good afternoon to you, Mr. Fang.  Good

9    afternoon to you Special Agent Atwood.  You may be seated.  And

10   as well, good afternoon to the victim representative.

11           MR. BROWN:  Robert Brown on behalf of Donna Murray,

12   who is standing to my right.

13           THE COURT:  Good afternoon to Mr. Brown and good

14   afternoon, of course, to you, Ms. Murray.  You may be seated.

15           Mr. Brown, I have been informed that your client

16   wishes to plead guilty to Count One of an information to be

17   filed.  And I understand, during the course of this proceeding,

18   your client would be waiving the right to be indicted in favor

19   of proceeding on the information.  Is all that correct?

20           MR. BROWN:  Yes, your Honor.

21           THE COURT:  Ms. Murray, is it correct that you intend

22   today to plead guilty to Count One of the information in this

23   case?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  Before I accept your guilty plea, I'm

N5GGmurP

| 1 | going to ask you certain questions so I can establish to my |

1   going to ask you certain questions so I can establish to my

2   satisfaction that you wish to plead guilty because you are

3   guilty and not for some other reason.  If you don't understand

4   any of my questions or you would like a further opportunity to

5   consult with your attorney, would you please let me know.

6           THE DEFENDANT:  Sure.

7           THE COURT:  Are you able to speak and understand

8   English?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Smallman, would you kindly place the

11  defendant under oath.

12          (Defendant sworn)

13          THE COURT:  Do you understand that you are now under

14  oath and that if you answer any of my questions falsely, your

15  answers to my questions may be used against you in another

16  prosecution for perjury?

17          THE DEFENDANT:  Yes.

18          THE COURT:  What is your full name?

19          THE DEFENDANT:  Donna Murray.

20          THE COURT:  How old are you?

21          THE DEFENDANT:  Thirty-eight.

22          THE COURT:  How far did you go in school?

23          THE DEFENDANT:  A bachelor's in college.

24          THE COURT:  Where was that?

25          THE DEFENDANT:  Hofstra University.

N5GGmurP

| | |
|---|---|
| 1 | THE COURT:  Have you ever been treated or hospitalized |
| 2 | for any mental illness? |
| 3 | THE DEFENDANT:  No. |
| 4 | THE COURT:  Are you now or have you recently been |
| 5 | under the care of a doctor or a psychiatrist? |
| 6 | THE DEFENDANT:  No. |
| 7 | THE COURT:  Have you ever been hospitalized or treated |
| 8 | for addiction to any drugs or to alcohol? |
| 9 | THE DEFENDANT:  Yes. |
| 10 | THE COURT:  When was that? |
| 11 | THE DEFENDANT:  March 2021. |
| 12 | THE COURT:  And that was a hospitalization or |
| 13 | treatment that you are referring to? |
| 14 | THE DEFENDANT:  Hospitalization. |
| 15 | THE COURT:  What was the outcome of that? |
| 16 | THE DEFENDANT:  I was released from the hospital and |
| 17 | have been sober since. |
| 18 | THE COURT:  Well, I'm very happy to hear that, and I |
| 19 | know how hard that can be. |
| 20 | THE DEFENDANT:  Thank you. |
| 21 | THE COURT:  Just to be clear, though, as you sit here |
| 22 | now, you are not using alcohol or drugs and you are not, |
| 23 | therefore, under the influence of same? |
| 24 | THE DEFENDANT:  I am not. |
| 25 | THE COURT:  And in the past 24 hours, have you taken |

N5GGmurP

1    any medicine, pills, drugs or alcoholic beverages, anything

2    like that?

3              THE DEFENDANT:  No.

4              THE COURT:  Is your mind clear today?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand what the purpose is and

7    what is happening in this proceeding?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Defense counsel, do you have any doubt as

10   to your client's competence to plead at this time?

11             MR. BROWN:  No.

12             THE COURT:  Government counsel.

13             MR. FANG:  No, your Honor.

14             THE COURT:  Based on the defendant's responses to my

15   questions, her demeanor as she appears before me and based on

16   counsels' independent assessments, I find that she is competent

17   to enter a plea of guilty at this time.

18             Ms. Murray, have you had a sufficient opportunity to

19   discuss your case with your attorney?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Have you had a sufficient opportunity to

22   discuss the particular charge to which you intend to plead

23   guilty, any possible defenses to that charge and the

24   consequences of entering a plea of guilty?

25             THE DEFENDANT:  Yes.

N5GGmurP

1          THE COURT:  Are you satisfied with your attorney's

2    representation of you, including in connection with reaching a

3    plea agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  I'm now going to explain certain

6    constitutional rights that you have.  You'll be giving up these

7    rights if you enter a plea of guilty.  Under the Constitution

8    and laws of the United States, you are entitled to a speedy and

9    a public trial by a jury on the charges contained in the

10   information.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  At that trial, you would be presumed to be

14   innocent and the government would be required to prove you

15   guilty by competent evidence and beyond a reasonable doubt

16   before you could be found guilty.  You would not have to prove

17   that you were innocent, and a jury of 12 people would have to

18   agree unanimously that you were guilty.

19         Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  At that trial, and at every stage of your

22   case, you would be entitled to be represented by an attorney.

23   And if you could not afford one, one would be appointed to

24   represent you free of charge.

25         Do you understand that?

N5GGmurP

1          THE DEFENDANT:  Yes.

2          THE COURT:  During the trial, witnesses for the

3     government would have to come to court and testify in your

4     presence.  Your lawyer could cross-examine the witnesses for

5     the government, object to evidence offered by the government

6     and, if you desire, issue subpoenas and offer evidence and

7     compel witnesses to testify on your behalf.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  At a trial, although you would have the

11     right to testify if you chose to do so, you would also have the

12     right not to testify and no inference, suggestion of guilt

13     could be drawn from the fact that you did not testify if that

14     is what you chose to do.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  At trial, the government would have to

18     prove each and every part or element of a charge beyond a

19     reasonable doubt for you to be convicted of that charge.

20          Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if you were

23     convicted at a trial, you would then have the right to appeal

24     that guilty verdict?

25          THE DEFENDANT:  Yes.

N5GGmurP

THE COURT:  Even at this time, right now, even as you are in the process of entering this guilty plea, you have the right to change your mind, plead not guilty and go to trial.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty and I accept your plea, you will give up your right to a trial and the other rights that I have just described, there will be no trial, and I will enter a judgment of guilty and sentence you on the basis of your guilty plea, after I receive the submissions I receive related to sentencing from you, your lawyer and the government, as well as a presentence report prepared by the probation department.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  If you plead guilty, you will also have to give up your right not to incriminate yourself, because today I will ask you questions about what you did in order to satisfy myself that you are in fact guilty as charged.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Now, the document which contains the charge to which you have indicated you wish to plead guilty is called an information.  It has been issued by the United States Attorney.  This is a serious crime and you have a

N5GGmurP

1    constitutional right to require the government to present

2    evidence to a grand jury, which may or may not vote to charge

3    you with this crime.

4              Do you understand what a grand jury is?

5              THE DEFENDANT:  Yes.

6              THE COURT:  If the grand jury did vote to charge you

7    with this crime, the charge would then be contained in a

8    document called an indictment, rather than an information.  An

9    indictment would be signed by both the United States Attorney

10   and the grand jury foreperson, whereas the information is

11   signed only by the United States Attorney.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And do you wish to give up your right to

15   be charged by a grand jury?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And counsel have handed up a signed waiver

18   of indictment form.

19             Mr. Brown, is this your signature on the form?

20             MR. BROWN:  It is, your Honor.

21             THE COURT:  And Ms. Murray, is this your signature?

22             THE DEFENDANT:  Yes.

23             THE COURT:  I notice that the signatures have been

24   witnessed by my deputy, Mr. Smallman.

25             Ms. Murray, when you signed this form, did you

N5GGmurP

1    understand that you were acknowledging your willingness to give

2    up your right to be indicted by a grand jury?

3              THE DEFENDANT:  Yes.

4              THE COURT:  I find a knowing and voluntary waiver of

5    the right to be indicted by a grand jury.

6              Ms. Murray, have you received a copy of the

7    information containing the charge against you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you read it?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Have you had a full opportunity to discuss

12   it with your attorney?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you understand that you are charged in

15   Count One with the crime of wire fraud in violation of

16   Title 18, United States Code, Sections 1343 and 2.

17             THE DEFENDANT:  Yes.

18             THE COURT:  Mr. Fang, would you kindly set out the

19   elements of that offense.

20             MR. FANG:  Yes, your Honor.

21             At trial, the government would be required to prove

22   beyond a reasonable doubt the following elements for wire

23   fraud:

24             First, that the defendant devised a scheme or artifice

25   to defraud or to obtain money or property by materially false

N5GGmurP

1    and fraudulent pretenses, representations or promises;

2              Second, that the defendant acted knowingly and with

3    the specific intent to defraud; and

4              Third, that in advancing, furthering or carrying out

5    the scheme, the defendant transmitted any writing, signal or

6    sound by means of a wire, radio or television communication in

7    interstate commerce or caused the transmission of any writing,

8    signal or sound of some kind by means of a wire, radio or

9    television communication in interstate commerce.

10             In addition to these elements, the government would be

11   required to prove by a preponderance of the evidence that venue

12   is proper in the Southern District of New York.

13             THE COURT:  Thank you, Mr. Fang.

14             Mr. Brown, are you in agreement with the government's

15   representation as to the elements of the offense?

16             MR. BROWN:  Yes, your Honor.

17             THE COURT:  Ms. Murray, did you hear and understand

18   Mr. Fang when he set out the elements of the offense?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand that, were you to go to

21   trial, the government would have to prove each of those

22   elements beyond a reasonable doubt?

23             THE DEFENDANT:  Yes.

24             THE COURT:  And do you also understand that, were you

25   to go to trial, the government would have to prove by a

N5GGmurP

| | |
|---|---|
| 1 | preponderance of the evidence that venue was proper in this |
| 2 | district, which includes, among other places, Manhattan, the |
| 3 | Bronx and Westchester County? |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  Turning to the potential penalties here, |
| 6 | do you understand that the maximum possible prison term for |
| 7 | this offense is 20 years' imprisonment? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | THE COURT:  You hesitated. |
| 10 | Mr. Brown, I take it you advised your client of that. |
| 11 | MR. BROWN:  Yes, that this is a 20-year case, that you |
| 12 | could possibly get 20 years. |
| 13 | THE COURT:  That doesn't mean that will be the |
| 14 | sentence.  In fact, there's no mandatory minimum sentence, and |
| 15 | therefore, the Court has the discretion, guided by the |
| 16 | sentencing statutes, to impose a prison sentence between zero |
| 17 | and 20 years.  I'm simply advising you today of the maximum. |
| 18 | THE DEFENDANT:  Got it. |
| 19 | THE COURT:  The maximum fine for this offense may |
| 20 | reach the greatest of $250,000 or twice the monetary gain you |
| 21 | derived or twice the monetary loss to persons other than you |
| 22 | resulting from the offense. |
| 23 | Do you understand that? |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  For pleading guilty to this offense, you |

N5GGmurP

1    may receive a term of up to three years supervised release.

2            Do you understand that?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Supervised release means that you will be

5    subject to monitoring when you are released from prison.  There

6    are terms of supervised release with which a person must

7    comply.  If you don't comply with them, you can be returned to

8    prison without a jury trial for all or part of the term of

9    supervised release imposed by the Court.  Under those

10   circumstances, you would not be given any credit towards that

11   term for the time you served in prison as a result of your

12   sentence for this crime, nor would you necessarily be given any

13   credit towards that term for any time that you had spent on

14   post release supervision.

15           Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  For pleading guilty to this crime, you

18   will be required to pay a mandatory $100 special assessment.

19           Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  For pleading guilty to this crime, you may

22   be required to pay restitution to any person injured as a

23   result of your criminal conduct.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

N5GGmurP

| | |
|---|---|
| 1 | THE COURT:  And for pleading guilty to this crme, you |
| 2 | may be compelled to forfeit any and all property constituting |
| 3 | and derived from proceeds obtained by your criminal conduct. |
| 4 | Do you understand that? |
| 5 | THE DEFENDANT:  Yes. |
| 6 | THE COURT:  Do you also understand that if I accept |
| 7 | your guilty plea and adjudge you guilty, that may deprive you |
| 8 | of valuable civil rights; that is, the right to vote, the right |
| 9 | to hold public office, the right to serve on a jury and the |
| 10 | right to possess any kind of firearm? |
| 11 | THE DEFENDANT:  Yes. |
| 12 | THE COURT:  Are you a United States citizen? |
| 13 | THE DEFENDANT:  Yes. |
| 14 | THE COURT:  Now, under current law, there are |
| 15 | sentencing guidelines, as well as other factors set forth in |
| 16 | the sentencing statutes that judges must consider in |
| 17 | determining a sentence. |
| 18 | Do you understand that? |
| 19 | THE DEFENDANT:  Yes. |
| 20 | THE COURT:  Have you spoken with your attorney about |
| 21 | the sentencing guidelines and those other factors? |
| 22 | THE DEFENDANT:  Yes. |
| 23 | THE COURT:  Do you understand that the Court will not |
| 24 | be able to determine the guideline range that will form one |
| 25 | part of my determination of what a just and reasonable sentence |

N5GGmurP

will be in your case until after a presentence report has been

prepared and until after you and your attorney and the

government all have had a chance to challenge any of the facts

recorded there by the probation officer?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that even though the

parties in the plea agreement have agreed that the sentencing

guidelines here recommend a sentence between 33 and 41 months'

imprisonment, their agreement as to what the sentencing

guidelines recommend is not binding on the probation department

and is not binding on the Court?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that, even after the

Court has determined what guideline range applies to your case,

the Court has the discretion under the current law to impose a

sentence that is higher or lower than the one that is

recommended by the sentencing guidelines?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if your attorney or

anyone else has attempted to predict what your sentence will

be, their prediction could be wrong?  No one, not your

attorney, not the government's attorney, no one can give you

any assurance of what your sentence will be, because I'm going

to decide your sentence and I'm not going to do that now and I

really can't do that now.  Instead, I'm going to wait to

N5GGmurP

1   receive a presentence report prepared by the probation

2   department, I'm going to do my own independent calculation of

3   what the sentencing guidelines recommend, I'm going to review

4   carefully the sentencing submissions of the government and the

5   defense.  Most of all, I'm going to determine what a reasonable

6   sentence is for you based on all of the factors contained in

7   the sentencing statute, which is known as Section 3553(a).

8            Do you understand all that?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Have you discussed these issues and the

11   overall sentencing process with your attorney.

12            THE DEFENDANT:  Yes.

13            THE COURT:  Even if your sentence is different from

14   what your attorney or anyone else has told you it might be,

15   even if it's different from the guideline range contained in

16   your plea agreement, you would still be bound by your guilty

17   plea and you would not be allowed to withdraw your plea of

18   guilty.

19            Do you understand that?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Has anyone threatened you or anyone else

22   or forced you in any way to plead guilty?

23            THE DEFENDANT:  No.

24            THE COURT:  Counsel, I understand that a plea

25   agreement has been entered into here; is that correct?

N5GGmurP

1          MR. BROWN:  Yes, your Honor.

2          THE COURT:  Mr. Fang, same?

3          MR. FANG:  Yes, your Honor.

4          THE COURT:  Counsel have handed up a photocopy of the

5     plea agreement.  I'm going to mark it as Government Exhibit 1.

6     For the record, it bears the typed date of April 13th, 2023.

7          Mr. Fang, is this your signature on page 6 and the

8     electronic authorized signature of Seb Swett, the acting

9     cochief of the general crimes unit.

10          MR. FANG:  Yes, your Honor.

11          THE COURT:  Mr. Brown, is this your signature dated

12    May 5th?

13          MR. BROWN:  Yes, your Honor.

14          THE COURT:  Ms. Murray, is this your signature dated

15    May 5th?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Ms. Murray, did you read this agreement

18    before you signed it?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did you discuss it with your attorney

21    before you signed it?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did you believe that you understood the

24    agreement at the time you signed it?

25          THE DEFENDANT:  Yes.

N5GGmurP

1          THE COURT:  Did you willingly sign this agreement?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did anybody force you to sign it?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you have any agreement with the

6     government as to your plea or your sentence that has been

7     omitted, that has been left out of this written agreement?

8          THE DEFENDANT:  No.

9          THE COURT:  Mr. Fang, would you summarize the

10    important terms of the plea agreement.

11          MR. FANG:  Certainly, your Honor.

12          Again, the information in this case charges the

13    defendant with one count of wire fraud, and the plea agreement

14    contemplates a guilty plea to the single count.  The wire fraud

15    count carries a statutory maximum penalty of 20 years, maximum

16    term of supervised release of three years, maximum fine of

17    $250,000, twice the gross pecuniary gain or twice the gross

18    pecuniary loss and a mandatory $100 special assessment.  The

19    plea agreement also contemplates forfeiture and restitution.

20    The parties have executed a consent preliminary order of

21    forfeiture, which includes a money judgment against the

22    defendant in the amount of $488,177.24.  The defendant also

23    agrees to make restitution in that same amount.

24          There are a series of guidelines stipulations in the

25    plea agreement and, in total, the stipulation results in an

N5GGmurP

1    offense level of 20 with no criminal history, the stipulated

2    guidelines range would be 33 to 41 months.  There is also an

3    appellate waiver that waives most of the defendant's appellate

4    rights, if she is sentenced within or below the stipulated

5    guidelines range.

6            THE COURT:  Thank you, Mr. Fang.

7            Mr. Brown, are you in agreement with Mr. Fang's

8    summary of those terms?

9            MR. BROWN:  Yes, your Honor.

10           THE COURT:  Ms. Murray, do you hear and understand

11   AUSA Fang, as he set out certain terms in the plea agreement?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  I just want to highlight one of them,

14   which is, do you understand that under this agreement you are

15   giving up your right to appeal or otherwise challenge your

16   sentence, so long as I don't sentence you to more than

17   41 months in prison?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Has anyone made any promise or done

20   anything other than what's contained in the plea agreement to

21   induce you to plead guilty?

22           THE DEFENDANT:  No.

23           THE COURT:  Has anyone made a promise to you as to

24   what your sentence will be?

25           THE DEFENDANT:  No.

N5GGmurP

1      THE COURT:  At this point, we're up to the point where
2   I would like you to tell me in your own words what it is that
3   you did that makes you believe that you are guilty of the
4   charge in the information.

5      THE DEFENDANT:  Sure.  So I wired money from the -- my
6   former employer's account into my personal bank account.  I do
7   not dispute any of the amounts, but I do have a very poor
8   memory of specifics at that time.  I was on drugs.  So some of
9   it is a blur.  But I don't deny any of it.  I'm sure that what
10  they calculated is the accurate amount.

11      THE COURT:  Thank you.  That gets us part of the way
12  down the road, but there are certain elements of the crime that
13  weren't touched upon.  So let's take this step by step.

14      Who is your former employer?

15      THE DEFENDANT:  The Loan Syndications and Trading
16  Association.

17      THE COURT:  And when you say you wired money, let me
18  ask AUSA Fang, the elements of wire fraud include a scheme and
19  artifice to defraud.  Can you set out for me what made this
20  fraud, as opposed to a theft offense.

21      MR. FANG:  Yes, your Honor.

22      There are at least a couple things.  I think the first
23  is that the defendant was not authorized to these funds.  And
24  at trial, we would present evidence that the defendant wired
25  these funds to her account without authorization.

N5GGmurP

1          In addition, your Honor, there are couple acts of

2     concealment, if you will, that we believe places the conduct

3     within the ambit of wire fraud.  The first is that we would at

4     trial put on evidence that the defendant had altered the

5     general ledger of LSTA to reflect purportedly legitimate

6     payments and purportedly legitimate recipients, even though

7     those wires in fact went to her bank account.

8          THE COURT:  In other words, you are saying that the

9     defendant fabricated internal records to cover up the fraud,

10    including as to the purpose and recipients of the payment?

11         MR. FANG:  Yes, your Honor.

12         THE COURT:  Ms. Murray, is that correct?

13         THE DEFENDANT:  Yes.

14         THE COURT:  What ties this to the Southern District of

15    New York?

16         MR. FANG:  Your Honor, if this case were to proceed at

17    trial, the first piece of it is that LSTA is based in

18    Manhattan.  The government would offer testimony from

19    representatives of LSTA that employees were required to be in

20    the office in Manhattan prior to the pandemic, as well as bank

21    records reflecting that at least one of the fraudulent wire

22    transfers that took place prior to the pandemic was made during

23    normal business hours.

24         THE COURT:  And I take it, were the fraudulent records

25    maintained in Manhattan?

N5GGmurP

1          MR. FANG:  Yes, your Honor.

2          THE COURT:  Ms. Murray, is all that correct?

3          THE DEFENDANT:  Yes.

4          THE COURT:  The requirement of the statute also

5     require Ms. Murray to have acted with the intent to defraud.

6          So when you, for example, altered books and records to

7     cover up the recipient or the nature of the payments, did you

8     do so understanding that that was going to defraud your

9     employer?

10          THE DEFENDANT:  Yes.  So I basically duplicated

11     invoice numbers to make it look like I was paying an invoice

12     that didn't exist.

13          THE COURT:  Did you thereby intend to defraud your

14     employer?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And the final element, Mr. Fang, just

17     would involve -- we have the scheme to defraud, intent to

18     defraud, venue -- there is the matter of the wiring.

19          MR. FANG:  Yes, your Honor.

20          If the case were to proceed to trial, the government

21     would offer testimony from Citibank, where LSTA held an

22     account, that the bank processes outgoing wire transactions

23     through its servers in Ohio and Texas.  And we would also offer

24     testimony from Chase, where the funds were deposited, that

25     Chase Bank processes incoming wire transactions through its

N5GGmurP

1    servers in Delaware, Illinois, Michigan and New Jersey.

2              THE COURT:  So there were interstate wires here that

3    were used to, in effect, facilitate the removal of the money

4    from LSTA to Ms. Murray?

5              MR. FANG:  Yes, your Honor.

6              THE COURT:  Ms. Murray, is that correct?

7              THE DEFENDANT:  Yes.

8              THE COURT:  When you did these acts, did you know that

9    what you were doing was wrong?

10             THE DEFENDANT:  Vaguely, yes.

11             THE COURT:  Well --

12             THE DEFENDANT:  Yes, yes.

13             THE COURT:  Did you know you were committing a crime?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Does government counsel believe that there

16   is a sufficient factual predicate for a guilty plea?

17             MR. FANG:  Yes, your Honor.

18             THE COURT:  Does defense counsel?

19             MR. BROWN:  Yes, your Honor.

20             THE COURT:  Does defense counsel know of any valid

21   defense that would prevail at trial or any reason why your

22   client should not be permitted to plead guilty?

23             MR. BROWN:  No, your Honor.

24             THE COURT:  Can government counsel represent that, had

25   the case gone to trial, it had sufficient evidence with respect

N5GGmurP

1  to each element to establish a conviction?

2          MR. FANG:  Yes, your Honor.

3          THE COURT:  Ms. Murray, because you have acknowledged

4  that you are in fact guilty as charged in the information,

5  because I am satisfied that you know of your rights, including

6  your right to go to trial, because I'm satisfied that you are

7  aware of the consequences of your plea, including the sentence

8  that may be imposed and because I find that you are voluntarily

9  pleading guilty, I accept your guilty plea and enter adjudgment

10  of guilty on the one count to which you have pled guilty.

11          Now, the next step in your case is going to involve

12  the sentencing process, and I am going to ask you to pay close

13  attention to what I am about to say.  The probation department

14  is going to want to interview you in connection with the

15  presentence report, which it will prepare.  Should you choose

16  to speak with the probation department, please make sure that

17  anything you say to them is truthful and accurate.  I read

18  those reports carefully and they are often quite important to

19  me in determining what a just and reasonable sentence is in a

20  particular case, so too, of course, are the sentencing

21  submissions by both sides.

22          You and your counsel have a right to examine the

23  report and comment on it at the time of sentencing.  I urge you

24  to read it, I urge you to discuss it with your attorney before

25  sentencing.  If there are any mistakes in the presentence

N5GGmurP

1    report, point them out to your lawyer so that he can bring them

2    to my attention before sentencing.

3              Will you agree to do that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Mr. Brown, I take it, this is not a case

6    in which you are seeking an expedited sentence?

7              MR. BROWN:  That is correct, your Honor.

8              THE COURT:  Then, counsel, how about Monday

9    September 11th at 11:00 a.m., it's about four months from now.

10             MR. BROWN:  That may be a difficult day to get in and

11   around here.

12             THE COURT:  That may be right.

13             September 12th at 2:00 p.m.

14             MR. BROWN:  That's fine, your Honor.

15             THE COURT:  Very good.

16             Government, that works for you as well?

17             MR. FANG:  Yes, your Honor.

18             THE COURT:  We'll put sentencing down for that date.

19             Defense submissions in connection with sentencing are

20   due two weeks beforehand.  The government's submission is due

21   one week beforehand.

22             Mr. Brown, you must arrange for your client to be

23   interviewed by the probation department within the next two

24   weeks.

25             Mr. Fang, you should provide your case summary to the

N5GGmurP

1    probation department within the next two weeks.

2              So I understand that the defendant was arrested on a

3    complaint and released on bail conditions by, I think, Judge

4    Gorenstein.  Government, do you have any objection to those

5    bail conditions being maintained up until the date of

6    sentencing?

7              MR. FANG:  No, your Honor.

8              THE COURT:  Ms. Murray, do you understand that all of

9    the conditions on which you have been released up until now

10   continue to apply and that a violation of any of those

11   conditions can have very serious consequences for you at the

12   time of sentencing?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  You must be in this courtroom for

15   sentencing at the time and date that I have set or you'll be

16   guilty of a separate crime called bail jumping and subject to a

17   fine and/or prison term in addition to whatever sentence you

18   may receive for the crime to which you just pled guilty.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Anything further for the government?

22             MR. FANG:  No, your Honor.

23             THE COURT:  Anything further from the defense?

24             MR. BROWN:  No.  Thank you, your Honor.

25             THE COURT:  I have signed the preliminary order of

N5GGmurP

1    forfeiture.  And as soon as Mr. Smallman is notified of the

2    number attached to this information, that will be plugged into

3    the blank spots on the first page.  Thank you.

4            We stand adjourned.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25